Doreen SHEPARD, Special Administrator
of the Estate of Michelle
Schmitz, Deceased

v.

MILBANK MUTUAL INSURANCE
COMPANY, a corporation.

No. CIV75–5070.

United States District Court,
D. South Dakota.

Oct. 3, 1977.

Lynden D. Levitt, Rapid City, S. D., for plaintiff.

Gene R. Bushnell, Rapid City, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

The present controversy comes before the Court on depositions, stipulated facts and the testimony of one witness. The controversy arose when Defendant, Milbank Mutual Insurance Company, denied liability and refused to defend a claim on behalf of its insured, Harry H. Grass. The claim grew out of an accident which occurred on March 3, 1974, and which resulted in the death of a three year old child. Defendant Milbank has urged 1) that a misrepresentation in the policy application renders the policy void and 2) that, in any case, a "business pursuits" exclusion absolves the company of any duty to defend and of any liability on the policy. This Court finds Defendant's contentions without merit.

## I.

### FACTS AND PROCEDURAL HISTORY

In September of 1970, Leone Eloise Grass, the record owner of part of lot 2 and of lots 3, 4 and 5 of what is known as the Grater Addition to the City of Custer, South Dakota, applied for and was issued a comprehensive personal liability policy by Defendant, Milbank Mutual Insurance Company. The policy covered only lots 3 and 4, the premises on which Leone Grass' father, Harry Grass, maintained his residence. At the time she applied for the policy, Leone Grass answered "no" to the question, "are there any business pursuits conducted at the premises?"

In 1972, Leone Grass conveyed all of the above-described property to her father, Harry Grass, and, at his request, Defendant Milbank renewed the policy and transferred it to Grass' name. Harry Grass was not required to fill out an application form. His deposition indicates that he had no particular expertise in insurance matters; he simply paid his premiums and assumed that if an accident occurred on his property, his policy would provide coverage. He continued to live in the residence located on lots 4 and 5 and to do record keeping there for a well drilling business which he conducted off the premises. Also in 1972, Harry Grass acquired the first of three trailers, all of which he placed on lot 5 of the Grater Addition property. This lot adjoined lots 3 and 4, the insured residence premises.*

The following year, Defendant Milbank, through its local agent, renewed Harry Grass' comprehensive personal liability policy for an additional three year period ending on September 2, 1976. Milbank's local agent testified by deposition that he passed by the Grass property twenty to forty times per month, was well acquainted with its appearance, had been on the property, knew of the trailers adjoining the residence and of the fact that Mr. Grass had much old machinery lying around his yard.

On March 3, 1974 while the Milbank policy was in full force and effect, a wooden platform-like structure, part of a trailer house entryway being stored on lot 4, was blown over. Michelle Schmitz, a three year old child who was playing nearby, was struck by the platform and died as a result of the injuries sustained.

Photographs taken in 1974 show that Harry Grass' residence property was littered with old car hulks, machinery, old boards and lumber—a random assortment of items collected over the years. Among these items was the trailer entryway which had been given to Grass by his stepson. The entryway had originally been part of the stepson's own trailer. Subsequently, Harry Grass placed it on his property. Mr. Grass was not using the entryway in connection with his trailers and he had no particular future plans to do so. Plaintiff argues convincingly that Harry Grass simply collected things, items of personal property to be used, if ever, at some future time when he might want or need them.

Following the accident, Doreen Shepard, the mother of Michelle Schmitz and a resident of one of Harry Grass' rental trailers, brought a wrongful death action against Mr. Grass in state court. Mr. Grass' insurer, Milbank Mutual, denied all liability and Grass was forced to retain counsel. On three separate occasions, Mr. Grass tendered defense of the wrongful death action to Milbank and each time the company refused to defend on the grounds that the policy did not apply to business pursuits. Under these circumstances and after fully informing Milbank, Mr. Grass entered into an assignment agreement whereby Mrs. Shepard became assignee of the insured's rights against Milbank Mutual. He also entered into a judgment by consent for the sum of $15,000. As part of the assignment agreement, Mrs. Shepard agreed not to execute on any property, real or personal of Mr. Grass, her only remedy being against the insurer. On June 5, 1975, the circuit court entered an Order Approving Settlement. Mrs. Shepard, who subsequently be-

---

* It is not of particular significance that one of the trailers jutted out a few feet onto lot 4. Harry Grass' trailer court was, for all practical purposes, located on lot 5.

came a citizen of the State of Montana, then brought suit in this Court to enforce her rights as assignee under the Milbank Policy.

## II.

## MISREPRESENTATION ON THE APPLICATION FOR INSURANCE

Milbank claims that the plaintiff cannot recover under the policy and that Milbank had no duty to defend its insured because the original application, dated August 2, 1970, contained a misrepresentation within the meaning of S.D.C.L.Ann. § 58–11–44 (1967). That statute provides in part:

. . . Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

■ Defendant has argued that the presence of trailers on lot 5 of the property constituted a "business pursuit conducted at the premises" and that failure to disclose the presence of these trailers constituted a material misrepresentation. This argument fails for two reasons. First, it is apparent from the facts stipulated to by Milbank that the application was signed on August 2, 1970 and that there were no trailers on any portion of the Grass property until 1972. Secondly, the premises insured by Milbank consisted of lots 3 and 4 of the Grater Addition. The trailers were subsequently placed on lot 5—property which Milbank did not insure and in which it could

properly have no interest. The mere fortuity that Grass owned the business property adjacent to his residence did not present a risk beyond that assumed by Milbank within the terms of its contract.

Defendant next contends that the record keeping which Mr. Grass and his wife did at home in connection with well-drilling operations conducted off the premises constituted a "business pursuit" within the meaning of the company's application form. Milbank argues that failure to disclose on the application that such record keeping was done at home constitutes a misrepresentation which negates its obligation under the policy. We find this argument unpersuasive.

■ Under South Dakota law, unless a representation made in an application is fraudulent or in some way material to the company's acceptance of the risk *per se* or acceptance at the premium charged, an insurer cannot avoid an otherwise valid policy. No evidence has been introduced to indicate that Leone Grass had fraudulent intent when she represented that no business pursuits were conducted at her father's home. Nor has it been shown that the Grasses' practice of doing paperwork in their home in any way altered the risk assumed by the company. For example, it was not shown that, as a result of the Grass' paperwork, business activity was generated, i. e. that customers or salespeople regularly came upon the premises thus increasing the risk. *See Callahan v. American Motorist Insurance Co.*, 56 Misc.2d 734, 289 N.Y.S.2d 1005 (1968). Absent such a showing of materiality, this Court cannot say that Leone Grass' answer to the question on her application was of such significance that, because of it, the policy should be avoided.

## III.

## POLICY EXCLUSIONS

In addition to its contentions regarding the application for insurance, Milbank claims that certain exclusions operate to relieve it of all liability either to defend its insured or to pay any claim against him. The applicable policy sections provide:

I Coverage L—Personal Liability . .

Exclusions

This coverage does not apply:

(a) to bodily injury or property damage arising out of any act or omission in connection with premises (other than the insured premises) owned, rented or controlled by any insured, but this exclusion does not apply to bodily injury sustained by any residence employee arising out of and in the course of his employment by the insured;

(b) to bodily injury or property damage arising out of (1) business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits or (2) the rendering of or failing to render professional services.

■ The law is well settled that exclusions should always be read narrowly in favor of the insured and ". . . if a reasonable construction can be placed on the contract which would justify recovery, it is the duty of the court to so construe it . . ." *Aetna Casualty and Surety Co. v. Stover*, 327 F.2d 288 (8th Cir. 1964). With this principle in mind, we read section (a) above to mean that the company is only liable for losses which occur on the insured premises and not for losses incurred elsewhere. The accident in which Michelle Schmitz was injured occurred on lot 4, part of the insured premises. Section (a), therefore, does not absolve Milbank from its duty to defend and to pay losses incurred by its insured.

■ Section (b) excludes from coverage bodily injury or property damage arising out of business pursuits of any insured. We understand this clause to refer to business pursuits conducted on the insured premises. The term "arising out of" implies a causal connection. The term is "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to or having connection with' . . ." *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co. of Wisconsin*, 189 F.2d 374, 378 (5th Cir. 1951). Defendant points first to the record keeping which Mr. and Mrs. Grass did at home in connection with their well drilling business which was operated elsewhere. Quite obviously, the injury sustained by Michelle Schmitz did not "arise out of," "flow from" or have any connection whatever with the Grass' record keeping. Coverage on that ground, therefore, is not defeated.

■ Defendant further contends that the injury arose out of a trailer rental business conducted on the insured premises. This argument is based on two theories. First, it is said that lots 3, 4 and 5 actually comprise one continuous piece of property and that rental trailers on lot 5 constitute a business pursuit on the insured premises within the meaning of the policy exclusion. The face of the policy, itself, defeats this proposition. The policy clearly covers only lots 3 and 4. It does not cover lot 5 and activity conducted on lot 5 cannot, therefore, be drawn into the scope of policy coverage for purposes of defeating liability.

Secondly, Defendant argues that the presence on lot 4 of the entryway, constitutes the pursuit of a business on the insured premises within the contemplation of the exclusion. As has been noted previously, Mr. Grass was not using the entryway in connection with his business. He derived no income from the entryway's presence and had no particular plans to use it in the future. Rather, the presence on Harry Grass' residence property of old car hulks, machinery, boards and bits and pieces of other structures, along with the entryway, indicates that the structure was one of a number of personal possessions haphazardly stored around Grass' home. The speculation that Mr. Grass might, someday, use the structure in furtherance of his business forms an insufficient basis upon which to deny coverage. We conclude that Michelle Schmitz's injuries did not arise out of a business pursuit conducted by the insured and that Milbank is liable on its policy. Because the $15,000 judgment by consent is reasonable under the standard set in *Ander-*

son v. Lale, 216 N.W.2d 152 (S.D.1974), we find Defendant liable in that amount to Mrs. Shepard as assignee of Harry Grass.

Such a finding is consistent with the doctrine that "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even [if] painstaking study of the policy provisions would have negated those expectations." Keeton, *Insurance Law Basic Text*, § 6.3(a) at 351. Harry Grass paid his premiums to an agent of Milbank Mutual who was well acquainted with the premises. Milbank accepted the premiums and the attendant risks and Harry Grass reasonably expected coverage. Those reasonable expectations must now be honored.

## IV.

### ATTORNEY FEES

In *Luke v. American Family Mutual Insurance Co.*, 476 F.2d 1015, 1020 (8th Cir. 1973), the Eighth Circuit Court of Appeals made clear the position of an insurer who denies its contractual obligations.

> "An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for *all the detriment caused by the insurer's breach of the express and implied obligations of the contract* . . . The insurer should not be permitted to profit by its own wrong." Citing *Comunale v. Traders and General Insurance Company*, 50 Cal.2d 654, 328 P.2d 198, 202 (1958). (Emphasis added.)

South Dakota law provides that for the breach of an obligation arising from contract the proper measure of damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." S.D.C.L.Ann. § 21–2–1 (1967).

The Milbank policy provides:

1. Coverage L—Personal Liability

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and *the company shall have the right and duty to defend any suit against the insured* seeking damages on account of such bodily injury or property damage . . .

■ The duty of Milbank to defend its insured is an "obligation arising out of contract" within the meaning of S.D.C.L.Ann. § 21–2–1 (1967). Once Milbank has been found liable on its policy, an award of the cost of defense is not an award of attorney fees in the usual sense. Rather, it is compensation for foreseeable consequences of the company's breach of contract. As the Eighth Circuit Court of Appeals stated in *Luke v. American Family Mutual Insurance, supra,*

> A breach of contract is never justified simply because the offending party in good faith believed he was entitled to refuse performance. When a breach occurs the basic question then concerns the proper measure of damages which flow from the breach.

In *Luke*, the Court went on to award damages in excess of the policy limits based on the defendant company's refusal to settle. The Court declined, however, to disturb the trial court's ruling denying attorney fees. In that case, however, the contractual nature of the duty to defend was not considered, nor, apparently, was it argued. We base our present decision on the explicit provisions of the contract entered into between Harry Grass and Milbank Mutual.

■ Because Mrs. Shepard, as assignee of Grass' rights against the company, stands in his shoes, she has inherited all rights Grass would have had against Milbank growing out of the company's failure to defend. Mr. Grass did hire an attorney to defend him. The right to reimbursement for those fees was accordingly assigned to Mrs. Shepard. Further, had the insurance company refused to pay the amount of the

settlement, Mr. Grass would have been entitled to reimbursement for expenses incurred to enforce his right to have the insurance company "pay on [his] behalf all sums which the insured shall become legally liable to pay . . ." Mrs. Shepard, as assignee, is, therefore, entitled as well to the attorney fees incurred in enforcing payment of the judgment obtained against Mr. Grass.

The foregoing contains the Court's findings of fact and conclusions of law.

