NORTH RIVER INSURANCE
COMPANY, Appellant,

v.

ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, Appellee.

No. 78–1903.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1979.

Decided June 29, 1979.

Rehearing and Rehearing En Banc
Denied Aug. 1, 1979.

Gerald L. Reade, Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, S. D., for appellant.

Deming Smith, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellee.

Before BRIGHT, HENLEY and McMIL-LIAN, Circuit Judges.

HENLEY, Circuit Judge.

This is the third suit in federal court in the District of South Dakota that has arisen from a serious motor vehicle collision that occurred in August, 1971. One of the vehicles involved was an automobile being operated by Robert Lowry, whose wife is Janel J. Lowry. The other vehicle was a tractor-trailer owned by Cochran, Inc. and being operated by a Cochran employee, Loudner. As a result of the accident Mr. Lowry sustained extensive and totally and permanently disabling injuries. He and his wife filed suit against Cochran, Inc., its owner, Jon Cochran, and the truck driver. They sought recovery in the total amount of $1,750,000.00.

At the time of the accident Cochran was insured by Commercial Union Insurance Company to the extent of $250,000.00, and the policy protected Loudner as well as his corporate employer. That policy had been obtained by Mr. Cochran through the Black Hills Agency, Inc. of Rapid City, South Dakota.

The suit filed by the Lowrys was defended by Commercial Union and was tried before a jury in the district court with Judge Andrew W. Bogue presiding. The jury found for the plaintiffs and assessed damages in favor of Mr. Lowry in the sum of $659,732.63 and in favor of Mrs. Lowry to the extent of $50,000.00. Thus, the total award, exclusive of interest, amounted to $709,732.63, a sum largely in excess of the $250,000.00 limit of Commercial Union. The deficiency amounted to $459,732.63. The judgment bore interest at the rate prescribed by South Dakota law.

Commercial Union paid its limit and passed out of the litigation. As of and probably prior to that time, Mr. Cochran had taken the position on behalf of his company that he had instructed Black Hills to obtain excess or umbrella coverage for the corporation that would have been adequate to pay off the Lowry judgment in full after Commercial Union had discharged

its obligation. Black Hills denied that it had been so instructed. In any event, no umbrella policy was issued, and Cochran and Loudner found themselves judgment debtors to the extent of the deficiency that has been mentioned. The case that produced the original judgment in favor of the Lowrys may be called Case 1.

In the circumstances just outlined, Cochran and Loudner assigned their excess coverage claims against Black Hills to Mr. and Mrs. Lowry, and the Lowrys satisfied their judgment against Cochran and Loudner. Mr. and Mrs. Lowry then filed suit against Black Hills alleging that Cochran had ordered the excess coverage, and that the failure of Black Hills to procure it amounted to negligence and breach of contract. That case may be called Case 2.

When Case 2 was commenced, Black Hills was protected by an errors and omissions policy issued by St. Paul Fire and Marine Insurance Company that had a limit of $150,000.00. Additionally, Black Hills had purchased from North River Insurance Company an umbrella policy which provided coverage in excess of St. Paul's limit and which was adequate to satisfy any excess judgment that the Lowrys, as assignees of Cochran and Loudner, might obtain against Black Hills.

In the trial of Case 2, which was also heard by a jury in the district court with Judge Bogue presiding, the Lowrys were represented by their attorneys;[1] Black Hills was defended by St. Paul which was represented by its attorneys, and North River had its attorney sitting in the case as an observer and monitor. Counsel for North River did not actively participate in the trial of Case 2 which is sometimes called the "errors and omissions" case.

As of the commencement of the trial of Case 2 Mrs. Lowry and her attorneys had indicated that they would settle the case for $350,000.00 which was about $100,000.00 less than the unpaid balance of the judg-

---

1. As of the time of the trial of Case 2 Mr. Lowry seems to have been incompetent to make his own decisions; his wife was acting for both of them, and no question is raised here as to her right or authority to do so.

ment that the Lowrys had obtained in Case 1. Apparently, neither North River nor St. Paul was interested in settling at that figure.

As the trial proceeded, Mr. Flaskamp, attorney for North River, put together a settlement proposal under the terms of which the case would be settled for a total figure of $266,000.00. Of that sum St. Paul would pay its $150,000.00 errors and omissions limit, plus $36,000.00 interest, and North River would pay $80,000.00. That proposal may have been agreeable to the attorneys for Mrs. Lowry, but it is not clear that it was satisfactory to her, or that her attorneys had any authority to bind her to the $266,000.00 figure.

In any event, St. Paul was not willing to contribute more than $93,000.00 to the settlement, and the settlement was not consummated. North River never indicated any interest in increasing its own contribution from $80,000.00 to $173,000.00 which, with the $93,000.00 that St. Paul was willing to pay, would have amounted to $266,-000.00, assuming that the case could have been settled for that sum.

In Case 2 the claim of the Lowrys against Black Hills was essentially a liquidated claim based on the unpaid balance of the judgment rendered in Case 1. The amount of that balance was $459,732.63 plus accrued interest amounting to $39,398.45, or a total of $499,131.08. The jury found for Mr. and Mrs. Lowry and Black Hills appealed. We affirmed. *Lowry v. Black Hills Agency, Inc.*, 509 F.2d 1311 (8th Cir. 1975).

The judgment was discharged by St. Paul paying $150,000.00 and North River paying the balance amounting to $349,131.08.[2] And, thereafter North River commenced the instant suit against St. Paul, which suit may be called Case 3.

The position of North River is that when St. Paul refused to contribute its policy limit of $150,000.00 to effectuate the $266,-000.00 settlement of Case 2, it was guilty of bad faith and breach of duty to plaintiff as the excess carrier and is liable to plaintiff for the money that plaintiff was required to expend as a result of the judgment.[3]

St. Paul denied liability, and the case went to trial before a jury with Chief Judge Fred J. Nichol presiding. The district court denied a motion for a directed verdict made by the plaintiff at the conclusion of all of the evidence and sent the case to the jury. The jury found in favor of St. Paul; plaintiff's motion for judgment notwithstanding the verdict, or, alternatively, for a new trial was denied, and this appeal was perfected.

Prior to the closing arguments in the case North River submitted 29 separate requests for instructions, and St. Paul submitted 21 requests. Judge Nichol seems not to have granted any of the requests, as such; instead, he gave to the jury his own comprehensive charge which covers 30 pages of the trial transcript and which evidently incorporates the requests of the respective parties to the extent that the judge felt that they were correct statements of the law.

For reversal, North River contends that the trial court made a pretrial error in refusing to sequester certain witnesses whose depositions were to be taken, and that miscellaneous errors were made in the conduct of the trial. We find those contentions to be without merit and will not comment on them further.

More basically, North River argues that it should have been granted a directed verdict, that serious errors were made by the district court in the matter of jury instructions, and that in any event it should have been granted a judgment notwithstanding the verdict or a new trial. North River's

---

2. That figure assumes that St. Paul simply paid its policy limits, and that all interest was paid by North River. Whether that assumption is accurate is of no importance here.

3. We note at this point that there was no direct contractual relationship between the "primary carrier," St. Paul, and the "excess carrier,"

North River. It seems to be undisputed, however, and the district court held, that North River stands in the shoes of Black Hills vis-a-vis St. Paul and that any settlement obligation that St. Paul would have owed to Black Hills would also have been owed to North River.

complaints about the instructions are closely geared to its underlying argument that it was entitled to judgment against St. Paul as a matter of law.

Federal subject matter jurisdiction is based on diversity of citizenship, and the governing substantive law is that of South Dakota. As to that law, the opinion of the district judge is entitled to great weight, *Alsup v. Garvin-Weinke, Inc.*, 579 F.2d 461 (8th Cir. 1978), although we do not accept that opinion blindly, *Luke v. American Family Mut. Ins. Co.*, 476 F.2d 1015, 1019 (8th Cir. 1973).

The question of the obligation that a liability insurer owes to its insured to settle a claim against the latter arises frequently. The law of South Dakota was stated authoritatively in *Kunkel v. United Security Ins. Co.*, 84 S.D. 116, 168 N.W.2d 723 (1969); *see also Crabb v. Nat'l Indemnity Co.*, 205 N.W.2d 633 (S.D.1973). *See also* Judge Nichol's opinion in *Luke v. American Family Mut. Ins. Co.*, 325 F.Supp. 1330 (D.S.D. 1971), *reversed in part, Luke v. American Family Mut. Ins. Co., supra*, 476 F.2d 1015.

The case presents two questions: (1) Did North River establish that it was entitled to judgment against St. Paul as a matter of law? (2) If not, were the factual issues in the case submitted to the jury with proper and adequate instructions?

The answer to the first question is dispositive of the procedural questions of whether North River was entitled to a directed verdict at the close of all of the evidence and whether, alternatively, it was entitled to a judgment notwithstanding the jury's verdict or to a new trial. The standard of review that we apply is the same as that which the trial court was required to apply originally. *See, e. g., Singer Co. v. E. I. Du Pont de Nemours & Co.*, 579 F.2d 433, 440–41 (8th Cir. 1978); *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 554 (8th Cir. 1968).

Those cases, and countless others, both federal and state, that could be cited, hold that in deciding the question of the submissibility of a case and the question of the sufficiency of the evidence to sustain a verdict, the evidence must be viewed in the light most favorable to the prevailing party and that he must be given the benefit of all inferences favorable to him that reasonably may be drawn from the evidence.

■■ From *Kunkel, Crabb* and *Luke,* all *supra,* the following principles of South Dakota law may be gleaned. An insurer is not liable for a failure to settle a claim against the insured [4] where the failure is due to a mere error judgment, lack of foresight or negligence. There must be "bad faith" on the part of the insurer. However, in determining whether the insurer was guilty of bad faith its negligence, if any, is a factor to be considered. The burden is on the insured to establish bad faith on the part of the insurer, and that such bad faith was a proximate cause of damage to the insured.

■ A settlement offer may permit an insurer to settle a claim against the insured within or at policy limits; or the offer, while in excess of policy limits, may be such that the insured would be willing and able to contribute the amount of the excess. In the latter situation the insured should be advised of the offer and given an opportunity to make the necessary contribution.

■ The insurance company is not permitted to reject a settlement offer simply because it would require it to pay its policy limits. Nor may it give consideration to its own financial interests at the expense of those of the insured. And in evaluating a settlement offer made by a plaintiff the insurer must approach the matter as though there were no policy limits and that it would be required to pay any sum that the plaintiff would be likely to recover.

The problem presented is twofold: First, could the case have been settled within policy limits or at policy limits with an added contribution by the insured? Second,

---

4. In discussing the obligation of an insurer to an insured we include the obligation of a "primary carrier" to an "excess carrier."

in rejecting the offer did the insurer act in legal bad faith?

■ From what has been said, it is obvious that if the Lowrys prevailed in Case 2, the judgment in their favor would be far in excess of St. Paul's limit of $150,000.00. In view of that fact, and in view of the uncertainty injected into the litigation by the testimony of Mrs. Lowry in the course of the trial of Case 3, North River contends that the burden should have been placed upon the defendant to prove that Case 2 could not have been settled either at or within policy limits or at a figure in excess of policy limits with North River making up the difference.

North River places primary reliance on *Young v. American Cas. Co. of Reading, Pa.*, 416 F.2d 906 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970), which involved New York law; *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 N.J. 474, 323 A.2d 495 (1974), which involved New Jersey law; and *Herges v. Western Cas. & Sur. Co.*, 408 F.2d 1157 (8th Cir. 1969), which arose in Minnesota.

We have given careful consideration to those cases. In the first two of them the insured prevailed at the trial court level; in the third case we reversed a district court holding in favor of the insurance company. We have no quarrel, and we do not think that the district court had any quarrel, with the principles announced in those cases when applied to their own facts. But, we do not think that the district court erred in refusing to apply those holdings to the facts of this case to the extent to which North River wanted them applied.

As to the instructions, we are required to read them fairly and as a whole, and when that is done, we think that they stated the law of South Dakota fully and fairly and as favorable to North River as it had any right to expect.[5]

Since the case was properly submitted to the jury and since there was no error in the instructions, there was no error in the action of the district court in refusing to grant a new trial to North River.

The judgment of the district court is affirmed.

5. The complaint of North River that the district court erred in its instructions by telling the jury in effect to give St. Paul credit for the $80,-000.00 that North River would have been required to pay out had the $266,000.00 settlement been effected is answered by observing that the question of how much North River was entitled to recover did not survive the jury's determination that it was not entitled to recover anything. We also note that while North River complains about St. Paul's unwillingness to pay its policy limit, it does not appear that North River ever was willing to consummate the settlement by expending its own funds in excess of $80,000.00. If St. Paul had contributed $93,000.00, which it was willing to do, and if North River had been willing to pay $173,-000.00 in settlement, it would have mitigated its damages by about 50% and would still have had possible recourse against St. Paul for at least the difference between what it would have paid out and what it would have been required to pay out had St. Paul been willing to pay its $150,000.00 limit.