MAYNARD v SAUSEDA

Docket Nos. 55444, 55445. Submitted March 5, 1982, at Lansing.—
Decided December 6, 1982. Leave to appeal applied for.

Mildred C. Maynard received severe injuries as a result of an
automobile accident in which the automobile in which she was
riding was struck by an automobile being driven by Leon W.
Sauseda and owned by Andrew L. Sauseda. Leon Sauseda was
insured by United Fire Insurance Company. Mildred C. May-
nard and her husband, William A. Maynard, filed suit in
Saginaw Circuit Court against Leon and Andrew Sauseda seek-
ing damages for the injuries suffered and loss of consortium,
respectively. The plaintiffs entered into a settlement agreement
with Andrew Sauseda whereby Andrew Sauseda's insurer paid
to the plaintiffs an amount of money equal to Andrew Sause-
da's insurance policy limits. A default judgment was entered
against Leon Sauseda. Both Leon Sauseda and United were
given notice of every significant step in the proceedings. There-
after, Leon Sauseda executed an assignment to the plaintiffs of
all of his rights against United in exchange for the Maynards'
agreement not to attempt to collect their judgment from him
personally or to take any further action against him. Thereaf-
ter, a writ of garnishment was issued against United. The
court, Gary R. McDonald J., entered a partial summary judg-
ment for the plaintiffs finding that United had a duty to defend
Leon Sauseda in the principal action and directing that the
default judgment be paid by United. The court denied United's
motion to set aside the default judgment. Leon Sauseda and
United both appealed separately raising numerous allegations

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 854.
  46 Am Jur 2d, Judgments § 740.
[2] 44 Am Jur 2d, Insurance § 1414 *et seq.,* § 2052.
[3] 22 Am Jur 2d, Damages § 11.
  44 Am Jur 2d, Insurance § 1416.
  Insurer's tort liability for consequential or punitive damages for
    wrongful failure or refusal to defend insured. 20 ALR4th 23.
[4] 44 Am Jur 2d, Insurance § 1405.
[5] 59 Am Jur 2d, Parties § 190.

of error and the plaintiffs cross-appealed. The cases were consolidated by the Court of Appeals. *Held:*

1. The trial court did not abuse its discretion in refusing to set aside the default judgment against Leon Sauseda. A default judgment should be set aside only where a defendant shows both good cause and a meritorious defense. Leon Sauseda did not satisfactorily show either good cause to set aside the judgment or a meritorious defense to the claim.

2. The trial judge did not err in refusing to reduce the amount of the awards to the plaintiffs. The conscience of the trial judge was not shocked by either the award for Mildred Maynard's injuries or the award to William Maynard for the loss of consortium claim. The Court of Appeals was not prepared to say that the trial court abused its discretion in refusing to modify either award. The no-fault act does not abrogate an action for loss of consortium.

3. The trial judge did not err in refusing to deduct from the default judgment the amount of the settlement entered into between the plaintiffs and Andrew Sauseda. The judge was aware of the settlement figure before the default judgment was entered. Further, both Leon Sauseda and United had a full opportunity to present any arguments relating to the settlement at the time that the default judgment was entered.

4. United had no standing to raise the arguments relating to setting aside the default judgment against Leon Sauseda. The action against United was a garnishment action. United was not a party to the original action against Leon Sauseda. An insurer who failed to defend its insured in a principal action cannot raise defenses in a garnishment action to defeat the principal judgment if the trial court had jurisdiction to enter the judgment.

5. The trial court did not err in holding that United was required to pay the amount of the default judgment in full even though that amount exceeds the limits of Leon Sauseda's insurance policy. Where an insurance company breaches its duty to defend an insured, the insurer should be obligated to make the insured whole for any damages suffered by the insured as a result of that breach of contract. The insured should not be required to prove that the amount of the judgment in excess of the policy limits was caused by the failure of the insurer to provide the defense because if the insurer had provided a reasonable defense as required by its contract, there would be no need for anyone to attempt to offer proofs on that subject.

6. The trial judge did not err in refusing to grant United's

motion to implead Andrew Sauseda's insurer as a third-party defendant in the garnishment action. United's allegations that Andrew Sauseda's insurer also had a duty to defend Leon Sauseda may easily be set forth in a separate action. The grant or denial of a motion to implead is discretionary with the trial court and the trial court did not abuse its discretion.

7. The trial court did not err in refusing to require United to pay attorney fees to the plaintiffs' counsel. The plaintiffs' only rights against United are pursuant to the assignment from Leon Sauseda and he expended no money for an attorney's services as a result of United's breach of contract with him.

Affirmed.

1. JUDGMENTS — DEFAULT JUDGMENT.

A default judgment should be set aside only where a defendant shows both good cause and a meritorious defense; a lower court's grant or denial of a default judgment should be reversed on appeal if it constitutes an abuse of discretion and an abuse of discretion should be found only where an unprejudiced person, upon considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made.

2. INSURANCE — REFUSAL TO DEFEND — GARNISHMENT.

An insurer, who failed to defend an alleged insured party in a principal action, cannot raise defenses in a garnishment action to defeat the principal judgment if the court had jurisdiction to enter the judgment in the principal action.

3. INSURANCE — BREACH OF CONTRACT.

An insurer should be obligated to make its insured whole for any damages suffered by the insured as a result of the insurer's breach of its contract to defend the insured.

4. INSURANCE — REFUSAL TO DEFEND — STATE OF MIND.

The question of whether an insurer's refusal to defend an action against one of its policyholders is made in good faith or bad faith is irrelevant where the insurer is under an express contractual duty to defend.

5. MOTIONS AND ORDERS — IMPLEADER — DISCRETION.

The grant or denial of a motion to implead a third-party defendant is discretionary.

*Timothy J. Taylor, P.C. (by Timothy J. Taylor), for plaintiffs.*

*Fordney & Cady, P.C.* (by *J. Michael Fordney*), for Leon Sauseda.

*Daniel S. Cooper, P.C.* (by *Daniel S. Cooper*), for United Fire Insurance Co.

Before: M. F. CAVANAGH, P.J., and ALLEN and E. C. PENZIEN,* JJ.

E. C. PENZIEN, J. These cases consolidated on appeal are taken from rulings by the trial court refusing to set aside a default judgment entered against Leon Sauseda for injuries suffered by plaintiff Mildred Maynard, as a result of a collision between a motor vehicle driven by defendant Leon Sauseda and owned by his brother Andrew Sauseda, and from rulings by the trial court directing that the default judgment be paid by Leon's insurer, United Fire Insurance Company (United), in garnishment proceedings filed by plaintiffs against United, after plaintiffs had taken an assignment of Leon's contractual rights with United.

On July 1, 1977, plaintiff Mildred Maynard received severe injuries requiring approximately 30 days of hospitalization and resulting in apparently permanent-partial disablement. Those injuries occurred when a vehicle driven by Leon and owned by Andrew crossed the centerline and struck the vehicle occupied by Mrs. Maynard. Leon acknowledged having had difficulty with the front end of his vehicle immediately before the accident, causing him to slow down. He said that when he accelerated again, the vehicle crossed the centerline and struck the vehicle occupied by Mrs. Maynard.

Approximately two weeks before the accident, Leon sold the vehicle that he was driving to An-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

drew. United was contacted by Leon and by plaintiffs' counsel on a number of occasions, requesting that United defend the claim against Leon by the Maynards. United claimed that Leon, not Andrew, owned the vehicle and since Leon was using a vehicle owned by him which was not covered under the policy, Leon was uninsured as to that automobile. The plaintiffs' counsel engaged in extensive efforts to convince United that it was in error in believing that Leon owned the automobile involved in the collision. Those efforts included giving specific details as to what had happened with regard to the transfer of the title and the name and address of an individual who could verify those facts. Plaintiffs' counsel also advised United that Andrew's insurance carrier, Cavalier Insurance Corporation (Cavalier), had acknowledged that Andrew was the owner of the vehicle and that they were prepared to pay their policy limits. The efforts by plaintiffs' counsel to convince United to defend Leon were unavailing. Plaintiffs commenced suit against Leon and Andrew on June 20, 1978, with process being served on Leon on July 14, 1978. A settlement agreement was entered into between plaintiffs and Andrew whereby Andrew's carrier paid to plaintiffs the policy limits of Andrew's insurance policy and plaintiffs agreed not to pursue any further claim against Andrew. Notice of the suit was given to United, as were notices of every significant step in those proceedings thereafter. After continued efforts by the plaintiffs to convince United to defend Leon, plaintiffs filed an affidavit of default against Leon on November 1, 1978. On February 21, 1979, with neither Leon nor United responding, plaintiffs filed a motion for default judgment and sent notice to Leon and United. On March 26, 1979, a default judgment was entered against Leon in the amount

of $150,000 to Mrs. Maynard for her injuries, $50,000 to Dr. Maynard for loss of consortium, and $70 in costs.

On May 1, 1979, Leon executed an assignment to plaintiffs of all of Leon's rights against United in exchange for the Maynards' agreement not to attempt to collect their judgment from Leon personally and to take no further action against Leon as a result of the collision. Leon signed that agreement after reviewing it with his personal attorneys. The agreement acknowledged Leon's responsibility for the accident and that, but for the agreement, the plaintiffs could seek collection against Leon personally. As a result of that agreement, Leon successfully extricated himself from any and all personal consequences arising out of the collision.

On May 15, 1979, a writ of garnishment was issued against United. United answered and ultimately the trial court entered a partial summary judgment for the plaintiffs finding that United had a duty to defend Leon against the claims filed by the plaintiffs in the principal action. United no longer disputes its contractual obligation to defend Leon.

No attorney appeared for Leon in the proceedings in the trial court and, after the assignment by Leon to plaintiffs, plaintiffs sought no relief against Leon. We are unable to fathom any reason why Leon then or now would want the judgment set aside unless some arrangement has been made (not shown on the record) between United and Leon whereby Leon remains protected and agrees to help extricate United from its present predicament. As noted, Leon has successfully extricated himself from any personal consequences arising out of the accident. The only conceivable avenue

through which Leon may suffer personal consequences is through the setting aside of the default judgment. Since the existence of the default judgment was the entire reason that the agreement was entered into between the plaintiffs and Leon, that agreement may well fall if the default judgment itself falls.

A brief has been filed in *this* Court on behalf of Leon by an attorney who appears by way of substitution for an attorney who appeared for *United* in the trial court below, and the record gives the appearance, at least, that efforts made on behalf of Leon on this appeal are in actuality efforts made on behalf of United, which *appears* to be the only party with a real interest in the outcome of this appeal.

Nevertheless, in the event we have misconstrued matters, we examine the issues raised on Leon's behalf. A default judgment will be set aside only where the defendant shows *both* good cause *and* a meritorious defense. GCR 1963, 520.4; *Butler v Cann,* 62 Mich App 663, 667-668; 233 NW2d 827 (1975). A lower court's grant or denial will be reversed on appeal if it constitutes an abuse of discretion. *Wood v Detroit Automobile Inter-Ins Exchange,* 99 Mich App 701, 707; 299 NW2d 370 (1980), *lv gtd* 411 Mich 900 (1981). An abuse of discretion is found only if an unprejudiced person, upon considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made. *Bruce v Grace Hospital,* 96 Mich App 627, 632; 293 NW2d 654 (1980).

It is asserted in this appeal that a meritorious defense to the Maynards' claim exists. In a deposition taken shortly before the entry of the default judgment, Leon testified that as he was driving the vehicle down the road the front wheels began to

wobble so badly that his girlfriend, who was riding in the car with him, thought that Leon was causing the vehicle to be driven erratically. He then slowed down the vehicle, at which point it quit wobbling. In spite of the apparently serious malfunctioning of the steering mechanism in the car, Leon proceeded to accelerate again, whereupon he found the vehicle pulling to the left into the path of the oncoming vehicle. We do not believe that the trial judge erred in failing to credit any argument that the above circumstances constituted a sudden emergency such as would prevent Leon from being liable for plaintiff's injuries.

On the good cause portion of this issue, attorneys for United initially made a number of arguments to the trial court and, when the trial court found no good cause established thereby, United's attorneys alleged in a supplemental motion that good cause was established because of certain dealings between plaintiffs' counsel and Leon. The trial court found no fraud, misrepresentation, or misconduct by plaintiffs' counsel. Both United and Leon have abandoned the earlier good cause arguments on this appeal and we are not convinced that the trial court abused its discretion in its findings of fact with regard to the conduct of plaintiffs' counsel or that we would have made different findings.

It is next argued by United and Leon that the trial judge erred in refusing to reduce to $150,000 award to Mrs. Maynard and the $50,000 award to Dr. Maynard, arguing that the awards were such as to "shock the judicial conscience". Mrs. Maynard suffered a total posterior dislocation of her hip with a rupture of the ligament and teres, a fractured right arm, and fractured ribs. She spent 31 days in a Midland hospital. After spending

much of that time in traction, she was required to learn to walk again. Although she was able to walk without assistance at the time of the entry of the default judgment, she favored her dislocated hip and had been advised of the possibility that her hip would need to be replaced at some point in the future. At the time of the hearing, she was taking aspirin twice a day to relieve her pain and she was no longer able to do ordinary housework. The trial judge, at the time of the award of the judgment and on re-examination later, found the award to be appropriate. Likewise, the trial court, at the time of the entry of the default judgment and again on re-examination, found the award of $50,000 to Dr. Maynard for loss of consortium to be appropriate. The conscience of the trial judge was not shocked by either award. Dr. Maynard lost the services of Mrs. Maynard totally for a period of time, he was required to observe her pain and suffering and will continue to observe her pain and suffering into the foreseeable future. In addition, he has lost the direct use of her services for ordinary housekeeping tasks and whatever loss in the relationship may result from her continued suffering. We are not prepared to say that the trial court abused its discretion in refusing to modify either award.

With regard to the award to Dr. Maynard, United and Leon also argued that the no-fault act abrogated any action for loss of consortium, but the Supreme Court has ruled contrary to that argument in *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502, 504-507; 309 NW2d 163 (1981).

Finally, it is argued that the trial judge erred in refusing to deduct $20,000 from the default judgment because of the settlement agreement entered

into between plaintiffs and Andrew prior to entry of the judgment. The record shows that the trial judge had been advised of that $20,000 settlement before he entered the judgment. It is argued that it is necessary to reduce the judgment by the $20,000 received from Andrew's insurer in order to avoid double recovery, a result which the Legislature intended to avoid by the adoption of MCL 600.2925d; MSA 27A.2925(4). In the action against Leon, the plaintiffs were entitled to recover the full amount of their damages, less any sum paid by Andrew or Andrew's insurer.

Although the trial judge did not specifically say that he deducted the $20,000 in determining the amount to be awarded to the plaintiffs in the default judgment, it is clear that the trial judge knew about the settlement. It is likewise clear that the trial judge did not err in refusing to set aside the default judgment *in toto.* Both Leon and United had a full opportunity to present any arguments relating to the settlement with Andrew at the time that the judgment was entered. United expressly declined an open invitation from plaintiffs' counsel to be present. Leon likewise declined the invitation to be present. We find no abuse of discretion in the trial court's denial of the motion to reduce the default judgment by the amount of the settlement since that was an issue which could have been and should have been addressed at the time of the hearing on the default judgment, and no good cause has been shown on behalf of either Leon or United for their failure to do so. Since Leon was required to show *both* good cause *and* a meritorious defense on the motion to set aside the default judgment, it cannot be said that a portion of the default judgment should be set aside because of the settlement with Andrew, even if Leon

could establish (which he did not) that the $20,000 was not already deducted and that, therefore, he had a partial meritorious defense. He has still failed to show good cause.

Finally, although we have discussed the merits of United's arguments on the motion to set aside the default judgment, we believe that United has no standing to raise those arguments. The action against United was a garnishment action. United was not a party to the original action against Leon. The Michigan Supreme Court in *Morrill v Gallagher,* 370 Mich 578; 122 NW2d 687 (1963), clearly held that an insurer who failed to defend in the principal action cannot raise defenses in a garnishment action to defeat the principal judgment, at least if the court had jurisdiction to enter the judgment in the first place. Even if we were not bound to follow the ruling of the Michigan Supreme Court in *Morrill,* we would think it a wise rule. If such a rule were not in place, insurers could do as United has attempted to do in this case, *i.e.,* sit back, deny responsibility to defend, wait for judgment to enter, and then begin to raise defenses to the plaintiff's claim against the insured.

Finally, United claims on this appeal that the trial court erred in holding that United was required to pay the amount of the judgment in full even though that amount exceeded its policy limits. United does not question the trial court's finding that United breached its contractual duty to provide a defense to Leon. Instead, United contends that, in the absence of bad faith, it should only be liable for damages up to the face amount of the policy. Although the trial court stated that it had little sympathy for United and although the facts may have justified a finding of

bad faith on the part of United, the trial court did not specifically make a finding that United *had* acted in bad faith, and we do not sustain the trial court on the basis that United acted in bad faith. Instead, we affirm the trial court on the basis that when an insurance company breaches its duty to defend an insured, the insurer is obligated to make the insured whole for any damages suffered by the insured as a result of that breach of contract. In this case, judgments totalling over $200,000 have been entered against Leon, who had not been defended in court or otherwise, a defense United had contractually agreed to provide.

Nor should the insured be required to prove that the amount of the judgment in excess of the policy limits was caused by the failure of the insurer to provide the defense, since if the insurer *had* provided a reasonable defense as required by its contract, there would be no need for anyone to attempt to offer proofs on that illusive subject.

In support of its position, United cites *Myers v Farm Bureau Mutual Ins Co of Michigan,* 14 Mich App 277; 165 NW2d 308 (1968). The facts of that case are indeed similar to the facts of this case in that the insurance company in that case refused to defend its insured and a panel of this Court held that it was necessary to show bad faith on the part of the insurer in order to recover amounts in excess of the policy limits. The opinion in *Myers* is a short one and cites as its only authority *Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929). However, in *Wakefield,* the insurer *did* defend the principal action and the plaintiffs claimed that they did so in bad faith. In that circumstance, the "bad faith" merely demonstrated the breach of the contract entered into by the insurer. That is, the insurer agreed to provide

a defense in good faith. Providing a defense in bad faith breaches the contract. In addition, the majority opinion in *Wakefield* dealt only with the question of whether the plaintiff had shown any bad faith and not whether a bad faith showing is required when the insurer provides no defense at all.

We believe the better reasoning is reflected in *Stockdale v Jamison,* 99 Mich App 534; 297 NW2d 708 (1980), *lv gtd* 411 Mich 1000 (1981). In that case, the insurer apparently had a reasonable, although ultimately unsuccessful, argument that it had no duty to defend. Its argument failed in the trial court, succeeded in the Court of Appeals, and failed in the Supreme Court. While it presented its arguments on the question of its duty to defend, the insurer in *Stockdale* neglected to provide a defense, resulting in default judgments being entered against its insured substantially above the policy limits. This Court, in *Stockdale,* held that good faith or bad faith is irrelevant when it is established that the contract of insurance has been breached by the failure to provide any defense.

Insurance companies may feel that such an approach will result in their having to provide a defense in some cases even when there is, in fact, no contractual obligation to do so. The insurance company is not, however, *required* to provide the defense. It is merely required to accept the consequences of its decision not to provide a defense. That is a posture not unlike the posture in which all of us frequently find ourselves when we make decisions. We are not required to make any particular decision or to take any particular action. We are merely required to accept the consequences of those decisions and actions.

United also argues that it should not be required

to pay the amount in excess of Leon's policy limits because Leon was required to mitigate the damages resulting from United's breach of its contract with Leon. The problem with that argument is that United neither proved nor attempted to prove that Leon had any capacity to mitigate the damages resulting from United's breach of contract. Presumably, according to United, Leon should have obtained the money to provide the defense that he had already paid United to provide. We need not address that issue decisionally since United presented no evidence that Leon had the ability to do so and, indeed, the record shows that Leon had no funds with which to hire counsel.

United also argues that the trial judge erred in refusing to grant United's motion to implead Cavalier as a third-party defendant in the garnishment action. Essentially, United claimed in its proposed third-party complaint that Cavalier should be responsible for paying part of the judgment which plaintiffs sought to recover from United on the theory that Cavalier likewise owed Leon a duty to defend through its contract with Andrew. The third-party action involved issues substantially different from those addressed in the garnishment action against United. The grant or denial of a motion to implead is discretionary with the trial court. *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314, 323; 174 NW2d 797 (1970). Although the trial judge did not articulate his reasons for denying United's motion to implead Cavalier, it is clear that the issues between United and Cavalier really had nothing whatsoever to do with the plaintiffs in this case and the trial judge might have felt that to allow impleader would have unduly complicated the plaintiffs' garnishment proceeding. In any event, United has suffered no harm since

its allegations against Cavalier can easily be set forth in a separate action against Cavalier. Accordingly, we decline to find error requiring reversal in the trial court's denial of United's motion to join Cavalier.

The final issue in this appeal involves a cross-appeal by plaintiffs which claims that the trial court erred when it refused to require United to pay attorney fees to plaintiffs' counsel in the amount set forth in plaintiffs' contingent attorney fee contract with their attorney. Plaintiffs' only rights against United come through the assignment from Leon. Thus, in essence, plaintiffs claim that they are entitled to an amount equaling one-third of the default judgment as attorney fees because United breached its contract with Leon to provide a defense to plaintiffs' action against Leon. Plaintiffs have cited no case so holding and we are aware of none. Leon expended no money for attorneys as a result of United's breach of contract with him. The attorney fees that plaintiffs seek to collect are the very fees that they agreed to pay to their lawyers for collecting their claim against Leon.

Affirmed without costs to either party, neither having prevailed in full.