TRIPLE U ENTERPRISES, INC., a corporation; L.R. Houck and Jerry Houck, Appellees,

v.

NEW HAMPSHIRE INSURANCE COMPANY, a corporation, Appellant.

No. 84–1178.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1984.

Decided July 12, 1985.

Gary R. Richards, Spearfish, S.D., for appellant.

Joseph M. Butler, Rapid City, S.D., for appellees.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

This appeal in diversity concerns the question whether, under South Dakota law, New Hampshire Insurance Company (NHIC) breached its contract of insurance with appellees (Triple U) by refusing to defend a suit against Triple U that had been brought in state court by Wade, Adolph and LaVern Hepper (Heppers). The district court, 576 F.Supp. 798 (D.S. D.1983),[1] held that NHIC had failed to honor the insurance agreement, and awarded summary judgment for Triple U for $338,-125.35, which represented the amount the Heppers had been awarded against Triple U by the South Dakota jury, plus $51,-895.35 Triple U had spent in defense of the Heppers' suit. NHIC appeals, contending that (1) it had no duty to defend Triple U; and (2) the district court erred in holding it liable for the amount of the state court judgment. We affirm in part, but remand for further consideration of the amount of judgment.

The policy in question, a "Farmer's Comprehensive Personal Liability" policy, provided under "Coverage L—Personal Liabili-ty" that NHIC would pay on behalf of Triple U "all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence." "Occurrence" was defined as an "accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." The policy defined "property damage" as "physical injury to or destruction of tangible property ... including the loss of use thereof at any time resulting therefrom." The policy excluded coverage for property damage to products sold, distributed, or handled by the insureds. Coverage L specifically stated that NHIC had the "right and duty to defend any suit against the insured seeking damages on account of such ... property damage."

Triple U, a corporation engaged in farming and ranching in South Dakota, arranged in 1978 and early 1979 to sell the Heppers a total of 650 head of buffalo. The policy was in force at the time the sales were made. The Heppers planned to breed the buffalo. Unfortunately, some, or all, of the buffalo sold were infected with brucellosis, a disease characterized by abortion, reduced fertility, and lowered milk production. The Heppers eventually sued Triple U for breach of warranty and fraudulent misrepresentation. Although Triple U requested NHIC to undertake defense of the suit, NHIC refused to involve itself, and Triple U was obliged to obtain representation on its own. Subsequently, the jury returned a general verdict in favor of the Heppers for $286,232.00 on the breach of warranty claim, and in favor of Triple U on the fraudulent misrepresentation claim. Triple U then instituted the present suit against NHIC with results hereinabove described.

*1. Duty to Defend.*

In analyzing the question whether NHIC had breached its duty to defend Triple U,

---

1. The Honorable Andrew W. Bogue, Chief Judge, United States District Court, District of South Dakota.

the district court noted that an insurer's duty to defend becomes operative if a complaint or petition filed against the insured states allegations which might fall within the policy's coverage. *See Haugan v. Home Indemnity Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972). The Heppers state complaint had alleged numerous types of damage, most of which the district court recognized were excluded under the NHIC policy. The court did conclude, however, that allegations in the Heppers' complaint of damage to calves later born of the buffalo had described "property damage" within the meaning of the policy. The district court also concluded that the Heppers' complaint had alleged an "occurrence":

> [Triple U], as sellers, provided warranties to the buyers regarding the fitness of the buffalo for breeding. The result flowing from the sale of the allegedly diseased buffalo was an unexpected, unforeseen and fortuitous event. Moreover, if proven, the allegations in Heppers' complaint showed that the calves born were subjected to a continuous and repeated exposure to the diseased condition of the bulls and cows.

*Triple U Enterprises v. New Hampshire Ins. Co.*, 576 F.Supp. 798, 808 (D.S.D.1983) (citations omitted). Accordingly, the district court held that the Heppers' complaint had stated allegations which might fall within Coverage L of the policy, and that NHIC therefore had had a duty to undertake defense of the suit.

■ On appeal, NHIC argues that the Heppers' complaint had described neither "property damage" nor an "occurrence"; that exclusion (a) of Coverage L of the policy made Coverage L inapplicable to the liability alleged in the Heppers' complaint; and that the only possibly applicable portion of the policy, Coverage N (entitled "Physical Damage to Property"), also excluded coverage. Because we agree, substantially for the reasons stated in the dis-

trict court's opinion, *Triple U Enterprises*, 576 F.Supp. at 808, that the Heppers' complaint could reasonably be read to describe both "property damage" and an "occurrence," we forego further discussion of those issues. We do address NHIC's other arguments regarding the existence of a duty to defend.[2]

■ Exclusion (a) of Coverage L of the policy states: "This coverage does not apply: (a) to ... property damage arising out of any act or omission in connection with premises (other than the insured premises) owned, rented, or controlled by an insured...." NHIC contends that since its policy does not specifically provide for products liability coverage, and since certain kinds of products liability insurance exclude coverage for property damage occurring off of the premises owned by the insured, this court should interpret exclusion (a) as limiting Coverage L to accidents, injuries and occurrences that take place entirely on the insured premises. NHIC contends that a narrower interpretation of exclusion (a) would be anomolous, because it would permit a policyholder who had not paid a premium for products liability insurance to obtain broader coverage than a policyholder who had paid such a premium.

■ Examination of so much of NHIC's policy as has been incorporated into the record does not persuade us that Coverage L is limited to events that occur entirely on insured premises. It is appropriate to give the language used in an insurance policy its ordinary meaning, and to construe exclusion clauses narrowly. *Shepard v. Milbank Mutual Ins. Co.*, 437 F.Supp. 744, 748 (D.S.D.1977), *modified*, 579 F.2d 477 (8th Cir.1978); *Grandpre v. Northwestern National Life Ins. Co.*, 261 N.W.2d 804, 807 (S.D.1977). On its face, exclusion (a) appears only to preclude coverage for property damage that is in some manner related to uninsured premises which the insured

---

**2.** Triple U alleges that these arguments were not timely presented to the district court. Although

it is not crystal clear that the district court fully

owns or controls.[3] *But see National Farmers Union Property and Casualty Co. v. Western Casualty and Surety Co.,* 577 P.2d 961 (Utah 1978). No evidence on the present record suggests that any "act or omission" connected with either the sale of the diseased buffalo, or the subsequent infection of the buffalo calves, took place on uninsured premises owned, controlled or rented by Triple U. Nor is there evidence that Triple U declined to purchase products liability insurance, or that Triple U ought to have been aware the NHIC "comprehensive personal liability" policy would exclude coverage for property damage caused by Triple U's products. *Cf. St. Paul Fire and Marine Ins. Co. v. Three "D" Sales, Inc.,* 518 F.Supp. 305 (D.N.D.1981) (size of premium inappropriate test for determining whether personal liability policy would cover seller's liability for property damage resulting from breach of warranty). In these circumstances, we reject NHIC's contention that exclusion (a) precludes coverage.

■ NHIC also contends, however, that property damage of the sort involved here should be considered in the context of Coverage N of the policy, rather than that of Coverage L. Coverage N applies to "property physically injured or destroyed during the endorsement period by any insured," and requires the insurance company to either pay the "actual cash value" of the property, or repair or replace the property. NHIC notes that Coverage N excludes any coverage for property damage arising out of "business pursuits."

This argument has no merit. Coverage L, like Coverage N, refers to "property damage." Moreover, Coverage L, unlike Coverage N, is clearly directed at liability resulting from a judicial proceeding. The policy nowhere states that recovery under Coverage N would preclude recovery under Coverage L; indeed, the policy states the

contrary: "No other insurance afforded by this policy shall apply to ... property damage with respect to which insurance is afforded under Coverage L...." In the circumstances of this case we see no justification for holding that Coverage N precludes Triple U from recovering under Coverage L.

We conclude the district court did not err in holding NHIC had a duty to defend Triple U against the Heppers' state suit.

*2. Damages for Breach of Duty to Defend.*

More troubling is the district court's treatment of the damage issues posed. As mentioned, numerous items of damage not within the policy's coverage were submitted by the Heppers to the state jury. The district court, indicating that it was unable to determine what portion, if any, of the jury award would be covered by the policy, held NHIC liable to Triple U for the full amount of the award. Citing *Space Conditioning, Inc. v. Insurance Co. of North America,* 294 F.Supp. 1290 (E.D. Mich.1968), *aff'd,* 419 F.2d 836 (6th Cir. 1970), the court reasoned that a lesser award against NHIC would permit NHIC to profit from its wrongful refusal to defend. *Triple U Enterprises,* 576 F.Supp. at 811. NHIC contends the district court's damage award was erroneous.

■ Although South Dakota courts apparently have not yet addressed computation of damages in situations of this kind, cases from other jurisdictions provide general guidance. A liability insurer who breaches a contractual duty to defend will be liable to the insured for all damages caused by the breach. *See Luke v. American Family Mutual Ins. Co.,* 476 F.2d 1015, 1020 n. 7 (8th Cir.1972), *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105

considered them, we address NHIC's contentions.

**3.** *Shepard v. Milbank Mutual Ins. Co.,* 437 F.Supp. 744, 748 (D.S.D.1977), *modified,* 579 F.2d 477 (8th Cir.1978), cited by NHIC, is not to the contrary. Although *Milbank* construes an identical exclusion clause to mean "the compa-

ny is only liable for losses which occur on the insured premises and not for losses incurred elsewhere," *id.* at 748, the case concerned an accident which had occurred on insured premises, and an insured who owned both insured and uninsured property.

(1973). Indeed, in some circumstances, the extent of the insurer's liability for damages awarded against the insured will be determined without regard to contractual provisions designed to limit this liability. *Cf. North River Ins. Co. v. St. Paul Fire and Marine Ins. Co.,* 600 F.2d 721, 724 (8th Cir.1979) (if insurer wrongfully and in bad faith foils efforts to settle suit between third party and insured, insurer will be liable for amount of subsequent judgment, without regard to policy limits); *Maynard v. Sauseda,* 121 Mich.App. 644, 329 N.W.2d 774, 779–80 (1982) (where insured suffered a default judgment, and insurer who wrongfully refused to defend fails to establish insured had had means to obtain representation, insurer is liable for entire award). As a general rule, however, the amount of the insurer's liability will be limited by the policy's coverage provisions. *See Alabama Farm Bureau Mutual Casualty Ins. Co. v. Moore,* 349 So.2d 1113, 1116 (Ala.1977); *Hogan v. Midland National Ins. Co.,* 3 Cal.3d 553, 564–66, 91 Cal.Rptr. 153, 160–61, 476 P.2d 825, 832–33 (1970); *Keller Industries, Inc. v. Employers Mutual Liability Ins. Co.,* 429 So.2d 779 (Fla.Dist.Ct.App.1983); *Timberline Equipment Co. v. St. Paul Fire and Marine Ins. Co.,* 281 Or. 639, 576 P.2d 1244 (1978); *Waite v. Aetna Casualty and Surety Co.,* 77 Wash.2d 850, 467 P.2d 847 (1970). The burden of proving coverage in this latter instance lies with the insured, as a part of his burden of proving the extent of his damages. *Thomas v. Western World Ins. Co.,* 343 So.2d 1298, 1303 (Fla. Dist.Ct.App.), *cert. dismissed,* 348 So.2d 955 (Fla.1977); *Waite v. Aetna Casualty and Surety Co.,* 467 P.2d at 850.

■ Here, there has been no showing that NHIC acted in bad faith, or that Triple U lacked effective representation during the state proceedings. It appears that the detriment to Triple U caused by NHIC's failure to defend was limited to the cost of the defense, plus the amount of NHIC's liability, if any, to Triple U under the terms of the policy. Because the general verdict obscures the jury's actual findings regarding damages, the rationale of the *Space*

*Conditioning* case—that an insurer should not be permitted to profit from a wrongful refusal to defend—convinces us NHIC should be liable for the maximum amount the state jury could properly have awarded on the basis of the evidence before it concerning items of damage covered by the policy. At the same time, the general verdict does not relieve Triple U of its burden of proving the extent of its damages; nor would it justify an assumption the jury based its award on speculation rather than evidence. Therefore, the district court's computation of damages must be modified unless Triple U established that the instructions and evidence presented to the jury would have permitted an award of $286,232.00 for items of damage within the coverage of the policy.

The district court recognized that of the six instructions given the state jury regarding possible damage awards, only one concerned damages for which NHIC might be liable under the policy. That instruction stated that the jury might compensate the Heppers for the "loss of any calf crop that was the proximate result of the breach of any warranty of the defendant." Evidence presented to the jury in support of this instruction evidently suggested, in varying detail, three types of damages involving calves: (1) a three year history of reduced calf crops; (2) loss of calves through abortions; and (3) diminution in value of calves surviving. The district court noted that any award by the jury for the first type of damage would not be covered under the NHIC policy, since the policy's "physical injury to tangible property" language is generally understood to exclude coverage for loss of profits or similar economic injuries. *See, e.g., Giddings v. Industrial Indemnity Co.,* 112 Cal.App.3d 213, 169 Cal. Rptr. 278 (1980); *Ludwig Candy Co. v. Iowa National Mutual Ins. Co.,* 78 Ill. App.3d 306, 33 Ill.Dec. 605, 396 N.E.2d 1329 (1979); *Wyoming Sawmills, Inc. v. Transportation Ins. Co.,* 282 Or. 401, 578 P.2d 1253 (1978). The court concluded, however, that the jury might have awarded damages for the other two types of injuries

 

to calves, and that such injuries were covered by the policy.

NHIC argues that the "loss of any calf crop" instruction would not support an award attributable to damage covered by the policy. Had the district court determined the instruction would encompass an award purely for diminution in value of calves born to diseased cows, we might tend to agree with NHIC. But we do not read the district court's opinion as so holding. Rather, that court found coverage under both the policy and "loss of any calf crop" instruction for calves born, dead or alive, injured by infection with brucellosis. *Triple U. Enterprises v. New Hampshire Ins. Co.*, 576 F.Supp. at 807.

In an unpublished memorandum subsequent to its published opinion, the district court on November 2, 1983 reiterated its holding of damage, and coverage, for physical injury, a disease, to tangible property, the calves that were born dead or alive. It was in that unpublished opinion also that the court found that it could not determine what portion of the general verdict of $286,232.00 was attributable to the claim for damages to calves born and consequently held NHIC liable for the full amount.

We have concluded that an award for the full amount can be justified here only if there was evidence in the state court record from which the jury could have found without speculation that covered damage to calves born equalled or exceeded the amount of the verdict.

Appellant argues with some force that that evidence shows at most coverage of $25,500.00 to calves born alive plus to which presumably would be added $18,-900.00 for thirty stillborn calves at $630.00 per head, said to have been seen by Ward Hepper.

However, this appeal arose from summary judgment. We do not know from the record before us, and the opinions of the district court do not reflect, the extent to which credible evidence of the dollar amount of covered damage was presented to the jury. We recognize that the evidence before the district court regarding damages to calves born may have been sketchy. Nevertheless, an effort must be made to establish the extent to which a jury award lawfully could have been made.

In these circumstances, we must vacate the judgment and remand for further consideration of the amount of the damage award. In doing so, we emphasize that we intimate no view as to the ultimate amount of judgment to be entered, other than to say that it must include the amount of $51,893.35 for defense of the state action as originally awarded by the district court.