UNITED STATES FIDELITY & GUARANTY COMPANY, A CORPORATION, APPELLANT, *v.* NEVADA CEMENT COMPANY, A NEVADA CORPORATION, RESPONDENT.

No. 7732

March 30, 1977            561 P.2d 1335

*Richard P. Wait, Ltd.,* Reno, for Appellant.

*Vargas, Bartlett & Dixon,* Reno, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:
Respondent Nevada Cement Company manufactures and

sells cement to concrete manufacturers. In September, 1969, a production error resulted in the manufacture of a quantity of cement with an insufficient amount of a chemical compound needed to give it strength. Relying on Nevada Cement's representation that it met market standards, C. B. Concrete Company purchased and used the defective product in concrete supplied to Brunzell Construction Company, general contractor for an addition of floors to the Sky Motor Inn, Reno, Nevada. After C. B. poured the concrete, routine inspection tests revealed the deficiency and the resulting weakened state of the concrete's structural integrity. The owner of Sky Motor Inn stopped all construction operations. However, when Brunzell agreed to cure the problem by leaving supportive shoring in place for an extended time and by adding shoring to the existing structure, the owner permitted construction to resume. The additional shoring and time delay caused Brunzell to incur $169,317.64 in additional construction expenses, for which it sought reimbursement from Nevada Cement.

Nevada Cement tendered Brunzell's claim to appellant, its insurance carrier; however, coverage was denied on the basis that there was no property damage. Thereafter, Nevada Cement negotiated a settlement with Brunzell for $129,000 and then brought this suit on its general liability policy to recover the amount and expense of the settlement. The district court awarded respondent the policy limits of $100,000, attorney fees, and interest. This appeal follows.

Appellant contends the district court erred in holding: (1) there was injury to or destruction of tangible property; (2) Nevada Cement was legally liable for damages suffered by Brunzell; and, (3) certain policy exclusions did not preclude coverage. These contentions lack merit.

1. By the policy's terms, appellant promised to pay on behalf of respondent all sums which respondent became legally obligated to pay as damages for loss of use of property resulting from property damage, defined as "injury to or destruction of tangible property."[1] Appellant evidently recognizes this language would apply if the structure had collapsed, or had been

---

[1]The policy issued to respondent provided in part:
"COVERAGE
"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
". . .
"B. property damage
to which this insurance applies, caused by an occurrence . . ."
"DEFINITIONS
". . .

removed and replaced in whole or in part. However, because such consequences could be avoided by additional shoring, appellant contends there was no injury to or destruction of tangible property.

Cases relied on by appellant do not support this contention and are distinguishable from the present circumstances. In the cited cases, coverage was precluded because the property damage was isolated to the insured's own product,[2] or intangible instead of tangible property suffered the damage,[3] or no "occurrence," as defined by the policy, occurred.[4] However, when the insured supplies a part to another who constructs an entity from the insured's part and other parts, courts have found coverage where the insured's part proves defective, causing damage to the entity. Pittsburgh Bridge & Iron Works v. Liberty Mut. Ins. Co., 444 F.2d 1286 (3rd Cir. 1971); Bundy Tubing Company v. Royal Indemnity Company, 298 F.2d 151 (6th Cir. 1962); Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y., 281 F.2d 538 (3rd Cir. 1960). Similarly, we think the question here is: does compensable injury to or destruction of tangible property occur when defective cement destroys the structural integrity of a partially concrete building? In our view, the answer is affirmative.

It has been held that the mere presence of a defective product in an entity can constitute property damage. See, for example: Dakota Block Co. v. Western Casualty & Surety Co., 132 N.W.2d 826 (S.D. 1965); Hauenstein v. Saint Paul-Mercury Indem. Co., 65 N.W.2d 122 (Minn. 1954). In the instant case, the presence of defective cement significantly weakened the

" 'damages' includes . . . damages for loss of use of property resulting from property damage;

" . . .

" 'property damage' means injury to or destruction of tangible property."

[2]See Haugan v. Home Indemnity Company, 197 N.W.2d 18 (S.D. 1972); Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co., 370 P.2d 396 (Kan. 1962); Liberty Building Co. v. Royal Indemnity Co., 2 Cal. Rptr. 329 (Cal.App. 1960); Volf v. Ocean Accident and Guarantee Corporation, 325 P.2d 987 (Cal. 1958).

[3]Hartford Accident & Ind. Co. v. Case Foundation Co., 294 N.E.2d 7 (Ill.App. 1973); St. Paul Mercury Ins. Co. v. Sugarland Indus., Inc., 406 S.W.2d 778 (Tex.Civ.App. 1966).

[4]Escambia Chemical Corp. v. U.S. Fidelity & Guar. Co., 212 So.2d 884 (Fla.App. 1968); E. K. Hardison Seed Co. v. Continental Casualty Co., 410 S.W.2d 729 (Tenn.App. 1966).

total structure, thereby requiring additional shoring to avoid the danger of collapse. We are not persuaded by appellant's argument that structural damage may be recognized only if collapse or removal ensues, and not if replacement is averted by a shoring process. We therefore think the trial court properly determined that the defective cement caused injury to tangible property within the meaning of respondent's insurance policy, even though financial loss was minimized by and limited to installation of shoring and related expenses. Cf. Teeples v. Tolson, 207 F.Supp. 212 (D.Ore. 1962).

2. In support of its second contention, appellant argues that, since the cement satisfied the Brunzell-Sky Motor Inn contract specifications, Nevada Cement can have no legal liability to Brunzell and thus appellant has none. The argument is not persuasive. Nevada Cement was not a party to that contract, did not rely on those specifications when manufacturing its cement, and represented to C. B. Concrete that the cement was of a higher quality. C. B. relied upon this representation in the formulation of its concrete mix design. Under these circumstances, we perceive no error in the trial court's determination that Nevada Cement was liable for Brunzell's damages. Cf. Mohasco Indus. v. Anderson Halverson Corp., 90 Nev. 114, 520 P.2d 234 (1974); General Electric Co. v. Bush, 88 Nev. 360, 498 P.2d 366 (1972); Worrell v. Barnes, 87 Nev. 204, 484 P.2d 573 (1971).

3. Finally, we consider appellant's reliance upon policy exclusions (k) and (n) to be misplaced.[5] Strictly construing the

---

[5]Exclusions (k) and (n) provided in part:
"This insurance does not apply:
". . .
"(k) to . . . property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Insured; but this exclusion does not apply to . . . property damage resulting from the active malfunctioning of such products or work;
". . .
"(n) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

policy, we think the trial court might properly find "active malfunction" of appellant's product within the meaning of that language, which limits exclusion (k). Beyond that, it has been held that exclusion (k) has no application where, as here, the product's failure to serve its intended purpose results from a "production error," as contrasted to a "design error." Arcos Corporation v. American Mutual Liability Ins. Co., 350 F.Supp. 380 (E.D.Pa. 1972); Dawe's Lab., N.V. v. Commercial Ins. Co. of Newark, N.J., 313 N.E.2d 218 (Ill.App. 1974). Similarly, exclusion (n) is inapplicable because respondent has not made a claim for damages resulting from the withdrawal, inspection, repair, replacement, or loss of use of its own product or its own property of which its product forms a part. Hamilton Die Cast, Inc. v. United States F. & G. Co., 508 F.2d 417 (7th Cir. 1975); Thomas J. Lipton, Inc. v. Liberty Mutual Ins. Co., 314 N.E.2d 37 (N.Y. 1974); Gulf Insurance Company v. Parker Products, Inc., 498 S.W.2d 676 (Tex. 1973).

Affirmed.

BATJER, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.