**SLA PROPERTY MANAGEMENT, Limited Partnership of Sisseton, South Dakota; Dakota Rail, Inc., a South Dakota corporation of Milbank, South Dakota; Sisseton Line Associates, a Limited Partnership of Milbank, South Dakota; Sisseton Seed and Grain Co., Inc., a South Dakota corporation of Sisseton, South Dakota; Farmers Co-op Elevator of Sisseton and New Effington, South Dakota; and Vig Elevator Co. of Peever, South Dakota, Appellants,**

v.

**ANGELINA CASUALTY CO., a Delaware corporation of Lufkin, Texas; and Lexington Insurance Co., a Delaware corporation of Boston, Massachusetts, Appellees.**

No. 87–5467.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1988.

Decided Sept. 7, 1988.

---

R.G. Schmidt, Pierre, S.D., for appellants.

David A. Gerdes, Pierre, S.D. and Lawrence L. Piersol, Sioux Falls, S.D., for appellees.

Before HEANEY and MAGILL, Circuit Judges, and EDWARDS,* Senior Circuit Judge.

MAGILL, Circuit Judge.

## I. BACKGROUND

This case is somewhat procedurally complex. A group of individuals and companies (appellants) formed a partnership to acquire a shortline railroad from the Milwaukee Railroad, in order to ship their grain to market. Appellants hired a contractor, AAA Railroad Construction Co. (AAA), to rehabilitate the track and railbed.

---

* THE HONORABLE GEORGE C. EDWARDS, JR., Senior Circuit Judge for the Sixth Circuit, sitting by designation.

Appellants required AAA to purchase insurance coverage, which was ultimately provided by appellees Lexington Insurance Co. (Lexington) and Angelina Casualty Co. (Angelina) (collectively, the insurance companies). AAA abandoned the project, and appellants sued AAA and another surety, and later added Lexington and Angelina as party defendants. Angelina appeared by answer. Lexington, however, did not enter an appearance despite being notified, in various ways, about the pendency of the action. The district court[1] entered a default and default judgment against Lexington and AAA. The part of the case dealing with Angelina, however, proceeded. Armed with a default judgment, appellants commenced a state court action in Massachusetts against Lexington. Lexington then filed a motion with the district court in South Dakota to vacate the default judgment against it, claiming (1) that it was not aware of the proceedings in South Dakota, and (2) that it had a meritorious defense. The district court, weighing the equities, granted the motion and vacated the default judgment against Lexington.

Lexington and Angelina then filed motions for summary judgment, asserting that their policies did not cover the loss to appellants. The district court granted both motions and entered judgment for the insurance companies. We affirm both the order vacating the default judgment and the orders granting summary judgment.

## II. DISCUSSION

### A. Default Judgment Against Lexington

Lexington was added as a party defendant in this action after the case was originally filed. The summons and complaint were served on Lexington's legal department on June 3, 1985. The legal department then transferred the process to the claims department, which was responsible for retaining counsel. Additional mailings alerted Lexington to appellants' request for and receipt of default judgments against AAA and Lexington. The claims department, however, did not retain counsel or otherwise take action to defend Lexington.

AAA assigned all of its policy rights to appellants, who then sought to enforce the default judgment against Lexington, in a Massachusetts state court. Lexington, in response to the Massachusetts litigation, moved to set aside the default judgment. The district court vacated the default judgment, holding that it had the power under Fed.R.Civ.P. 54(b) to revise its order, and under Fed.R.Civ.P. 60(b) to do justice in a particular case. It concluded that even though Lexington's neglect was inexcusable, justice would be served by allowing the case to proceed to trial. The court stated that the very large judgment, the fact that Lexington appeared to have a meritorious defense, and the fact that the rest of the action (involving Angelina) was still pending, militated in favor of vacating the judgment. Mem.Op. of February 23, 1987 at 5.

Appellants argue first that the trial court had no jurisdiction to relieve Lexington from the default judgment under Fed.R. Civ.P. 60(b), because Lexington, despite receiving notice of judgment, failed to appeal or seek other relief. They assert that relief under Rule 60(b) is not appropriate where the party seeking relief has full knowledge of the proceedings and entry of judgment but fails to act. Appellants argue alternatively that the district court abused its discretion by granting Lexington relief from the default judgment. They assert that Lexington has not demonstrated the requisite elements for relief from a default judgment: good cause for the default, coupled with quick action to correct it, and a meritorious defense to the complaint. *United States v. One 1979 Rolls-Royce Corniche*, 770 F.2d 713, 716 (7th Cir.1985).

Lexington responds that the court's action was proper under Fed.R.Civ.P. 54(b) because there were multiple claims and defendants, and a final judgment adjudicating all claims had not been rendered—there-

1. The Honorable Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota.

fore, the rule allows for revision of the earlier judgment. Lexington then argues that the court did not abuse its discretion in setting aside the judgment under Rule 54(b).[2]

■ We believe that the district court's order vacating the default judgment was appropriate under Rule 54(b). That rule clearly provides in part that in an action involving multiple claims or multiple parties (as is the case here), where a partial judgment has been rendered:

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). Accordingly, because under Rule 54(b) the district court retains the power to alter rulings until final judgment is entered on a cause, *see Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir.1980), the district court had the authority to vacate the default judgment in this case. We need not examine Lexington's other arguments on this issue.

B. Coverage Scope

■ Appellants, who have acquired AAA's policy rights, sought a judgment declaring coverage against the insurance companies. Once the default judgment against Lexington was vacated, both Lexington and Angelina filed motions for summary judgment, contending that their policies do not cover the type of damage caused by AAA's breach of its contract with appellants.[3]

The district court granted both motions, holding with respect to Lexington that the policy covered "damages because of physical injury or destruction of property" and that none of appellants' losses fell within the coverage. The court concluded that the damages asserted were suffered as a result of AAA's breach of contract, and constituted consequential losses, not losses due to physical impairment of property.

With respect to Angelina, the court determined that the policy covered two types of physical damage: "(1) physical injury to or destruction of tangible property * * *, (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence."[4] The court concluded that none of the losses asserted, *e.g.*, (1) excess cost for new construction; (2) additional engineering fees; (3) additional officer, director, and attorney's fees; and (4) lost profits, come within the ambit of Angelina's coverage.

Appellants argue that physical damage is not necessary for coverage, and that even if it is, there was physical damage in this case. They contend specifically that AAA began to remove the track and then stopped, and that this damage to the track is the source of their damages. We cannot agree with appellants' construction. The language in the policies must be construed according to its plain and ordinary meaning. *Grandpre v. Northwestern National Life Insurance Co.*, 261 N.W.2d 804, 807

---

**2.** Lexington argues alternatively that if the default judgment is deemed final (in which case Rule 54(b) would not apply), Rule 60(b) provides authority for the district court's order. Lexington also asserts, as a basis upon which to affirm the district court, that as a condition to vacating its order, the district court ordered Lexington to pay appellants an amount exceeding $15,000 for attorney's fees and costs associated with the Massachusetts litigation. Lexington argues that appellants' acceptance of the money constituted a waiver of its right to appeal. Because of our disposition, we do not reach these contentions.

**3.** Angelina furnished contractual, premises operations, and completed operations coverages. Lexington furnished railroad operations coverage.

**4.** Similarly, Lexington policy number PC 5559052 provides in pertinent part that Lexington shall:

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of physical injury or destruction of property, including loss of use of any property due to such injury or destruction * * *.

(S.D.1977). As the district court pointed out, both insurance contracts require, as a predicate for recovery, either physically injured tangible property or the loss of use of tangible property. *See Triple U Enterprises, Inc. v. New Hampshire Insurance Co.*, 576 F.Supp. 798, 805–06 (D.S.D.1983), *aff'd in relevant part,* 766 F.2d 1278 (8th Cir.1985) (definition of tangible property). The district court determined, based upon *Triple U,* that the inclusion of the word physical "negates any possibility that the policy was intended to include 'consequential or intangible damage,' * * *." 576 F.Supp. at 807. The losses claimed by appellants, however, are the result of excess costs, fees, and lost profits as a result of AAA's breach, as well as loss of profits due to the unavailability of the railroad lines.

▪ Although we have found no other South Dakota law directly defining "physical injury" to "tangible property," other courts have reached our conclusion. *See, e.g., Liberty Mutual Insurance Co. v. Consolidated Milk Producers' Ass'n,* 354 F.Supp. 879, 884 (D.N.H.1973). Accordingly, we agree with the district court that the losses claimed are not physical, tangible property damages but rather, are intangible consequential damages and thus not within the scope of coverage under the policy of either insurance company.[5]

## C. AAA Not Lexington's Insured

▪ Although our discussion of the scope of coverage disposes of this case as to both insurance companies, we note a second reason why appellants' argument must fail as to Lexington. Lexington asserts, in addition to its argument regarding scope of coverage, that it was not liable because AAA was not its insured. It claims that AAA's name was listed on a certificate of insurance by mistake, and that Lexington actually insured Dakota Rail, Inc., one of the appellants (plaintiffs below). The district court declined to reach this issue, instead relying on the scope of coverage argument. A discrepancy indeed exists between the insurance contract itself and the certificate of insurance. The certificate lists AAA as the insured, while the contract of insurance lists Dakota Rail, Inc. as the insured. The law governing this issue is clear. "[T]he certificate is not a part of the contract of, or necessary to, the insurance. * * * It served merely as evidence of the insurance * * *." *Boseman v. Connecticut General Life Insurance Co.*, 301 U.S. 196, 203, 57 S.Ct. 686, 690, 81 L.Ed. 1036 (1937).[6] Accordingly, we accept Lexington's argument on this issue and hold that summary judgment was properly granted in favor of Lexington for the additional reason that it did not insure AAA.

## D. Res Judicata

▪ Appellants, as owners of AAA's policy rights, finally argue that the insurance companies are barred by the doctrine of *res judicata* from denying policy coverage, because (1) they failed to defend AAA, even though they had a contractual duty to defend; and (2) they could have raised defenses prior to default being entered against AAA.

The insurance companies argue, *inter alia,* that if the damage is not within the scope of coverage, then there was no duty

---

5. As an alternative basis on which to affirm the district court's grant of summary judgment to Angelina, we hold that AAA's abandonment of the project did not constitute an "occurrence" within the meaning of Angelina's policy. An occurrence is defined in Angelina's policy as "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured; * * *." AAA's intentional abandonment of the work did not constitute an "accident," *see Taylor v. Imperial Casualty & Indemnity Co.,* 82 S.D. 298, 144 N.W.2d 856, 858 (1966), and thus was not a covered "occurrence" under the policy.

6. We are aware of a South Dakota case, *Cheney v. Metropolitan Life Insurance Co.,* 370 N.W.2d 569, 572 (S.D.1985), which held that where the certificate of insurance contains provisions not contained in the master policy itself, the certificate is construed to be an integral part of the policy. Such is not the case here, for the certificate at issue contains no substantive provisions, but merely sets out the names and addresses of involved parties and the nature of coverage. Moreover, the certificate states that it "does not amend, extend, or alter the coverage afforded by the policies listed below."

to defend and consequently no *res judicata* argument. Based upon our conclusion as to the scope of coverage, we agree with the insurance companies.

## III. CONCLUSION

We affirm the district court in all respects.